UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

|  |  |
|---|---|
| JASON MCINTYRE,<br>Plaintiff,<br><br>v.<br><br>SAN ANTONIO WATER SYSTEM,<br>Defendant. | )<br>)<br>)<br>)<br>)  Civil Case No. 16-cv-399 (RCL)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

Plaintiff Jason McIntyre challenges his administrative separation from defendant San Antonio Water System (SAWS) as a discriminatory violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* (Title VII) and the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 *et seq.* (ADA). Defendant has moved for summary judgment. Before the Court is defendant's motion [ECF No. 24] for summary judgment, McIntyre's response [ECF No. 26], and defendant's reply [ECF No. 27]. For the reasons articulated below, the Court finds that the motion for summary judgment should be **GRANTED**.

## II.  BACKGROUND

In 2004, SAWS hired McIntyre to work as a Graduate Engineer I. Graduate engineers were responsible for assisting in the planning and implementation of engineering projects for SAWS. SAWS Position Description [ECF No. 24-3] 6. The position required work in both an office environment and in the field. *Id.* McIntyre performed that position until August 2014. McIntyre

Depo. [ECF No. 24-2] 17. He has not performed work of any kind since August 2014, nor has he sought any other work since August 2014. *Id.*

McIntyre suffers from various medical conditions, including Crohn's disease, fibromyalgia, neuropathy, asthma, and high cholesterol. McIntyre Depo. 18-19. According to McIntyre, his Crohn's disease, fibromyalgia, and neuropathy kept him from working beginning in August 2014. *Id.* Similarly, his doctors have been unable to assess whether or when he would be able to return to work. *Id.* at 22. On August 19, 2014, McIntyre began a leave of absence under the Family Medical Leave Act for a personal, non-occupational illness. Exhibit 3 [24-3]. McIntyre's doctor certified that McIntyre complained of fatigue and muscle pain and was "unable to perform any job function at this time." *Id.*

As an employee of SAWS, McIntyre was the beneficiary of a non-occupational illness policy that allows employees up to six months of unpaid leave. Ex. 4 [ECF No. 24-4]. The policy states:

> • **Pertains to any employee who is absent from work, or unable to perform the essential functions of their job duties for five (5) or more consecutive calendar days as a result of a health condition.**
>
> Consistent with SAWS Employee Handbook, the maximum amount of leave you will be granted is six months from the first day you are unable to perform the essential functions of your job. The six-month period includes any time taken under the Family Medical Leave Act (FMLA), which is a maximum of twelve (12) weeks, and any time you may spend on modified duty, not to exceed ninety (90) days. If you are unable to perform the essential functions of your current position at the expiration of six months and SAWS is unable to provide reasonable accommodation for you within that position as defined by the American's with Disabilities Act (ADA), your employment will be terminated. You may retire if eligible, or offer your resignation.

*Id.* According to the policy, therefore, if an employee is unable to perform the essential functions of their job position, reasonable accommodations will be made to allow them to return to work, as required by the ADA. *Id.* If no reasonable accommodations can be made, an employee who is unable to perform the essential functions of their job will be terminated. *Id.*

On November 6, 2014, McIntyre was still unable to return to work. SAWS notified McIntyre that his FMLA leave, which began on August 18, 2014, had expired and that continued medical leave would be classified as non-FMLA leave of absence. Exhibit 5 [ECF No. 24-5]. McIntyre did not return to work and remained on leave. On February 10, 2015, McIntyre was approved for long-term disability, effective January 19, 2015, through a Principal Life Insurance Company policy with SAWS. Exhibit 7 [ECF No. 24-7]. He receives approximately $2,600 per month. McIntyre Depo. 23. A condition of long-term disability is McIntyre's inability to work. *Id.* at 27. Indeed, SAWS was notified of McIntyre's approval on February 18. Exhibit 6 [ECF No. 24-6]. On February 23, 2015, McIntyre remained under doctors' care and had no estimated date for return to work. *Id.* On February 24, 2015, after more than six months on leave, SAWS terminated McIntyre. *Id.* In the termination letter, SAWS stated that McIntyre's six months of maximum leave had expired on February 18, 2015, and that McIntyre's separation was based on this extended leave of absence. *Id.*

On August 20, 2014—days after he first began his leave of absence—McIntyre filed an EEOC charge alleging racial discrimination and hostile workplace environment. Specifically, McIntyre claimed that he was reprimanded and placed on probation in July 2014 based on false allegations, that his whereabouts and activities at work were "closely monitored" and "overly scrutinized by management. Exhibit 8 [ECF No. 24-8]. On March 31, 2015—after McIntyre's termination—the EEOC issued a notice of right to sue within ninety (90) days. Exhibit 9 [ECF

NO. 24-9] ("Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost."). On July 6, 2015, McIntyre also obtained a notice of right to sue from the Texas Workforce Commission (TWC), referencing the same EEOC complaint. The TWC notice stated that McIntyre has "SIXTY (60) DAYS FROM THE RECEIPT OF THIS NOTICE TO FILE THIS CIVIL ACTION." Exhibit 11 [ECF No. 24-11].[1]

On September 8, 2015, McIntyre filed a state suit alleging discrimination in violation of the Texas Labor Code. Exhibit 10 [ECF No. 24-10]. McIntyre only claimed violations of Chapter 21 of the Texas Labor Code. *Id.* at p. 3 ("In this Petition, Plaintiff is not seeking any remedy under any federal statute."). Specifically, McIntyre claimed that disparate treatment and hostile work environment were based on race. He also alleged that his termination was based on his race and disability, claiming defendant was unable to accommodate plaintiff's illness. *Id.* McIntyre sought lost wages, mental pain and anguish damages, and reinstatement to his position or to an equivalent position.

On December 16, 2015, the Bexar County District Court dismissed that case as untimely under Texas law because the suit was filed 161 days after the EEOC notice and 64 days after the TWC notice. Exhibit 12 [ECF No. 24-12]. The Bexar District Court held that it either lacked jurisdiction over McIntyre's claims because McIntyre's filing was untimely under Tex. Labor Code § 21.254, or—if the 60-day requirement is not jurisdictional prerequisite under Texas law (as is the case in federal Title VII cases)—dismissal was appropriate because failure to timely file resulted in the loss of a claim. Accordingly, the case was dismissed with prejudice. *Id.*

---

[1] This scheme mirrors the scheme under federal law, which requires plaintiffs to file suits within a particular time after receiving a notice of right to sue. In Texas, complainants have 60 days. Tex. Labor Code § 21.254. Under federal law, plaintiffs have 90 days. 42 U.S.C. § 2000e-5(f)(1); *Espinoza v. Missouri Pacific R. Co.*, 754 F.2d 1247, 1249 (5th Cir. 1985). This 90-day requirement is akin to a statute of limitations, rather than a jurisdictional prerequisite. *Id.*

4

Weeks later, on January 4, 2016, McIntyre filed a second EEOC complaint. Exhibit 13 [ECF No. 24-13]. This second complaint alleged that McIntyre's termination was due to a failure to accommodate, race discrimination, and in retaliation for his original EEOC complaint, which are violations of either Title VII or the ADA. *Id.* The EEOC issued a second notice of right to sue on January 25, 2016. On April 27, 2016, McIntyre filed this suit, within the 90-day time limit for Title VII and ADA suits. As amended, McIntyre's complaint includes claims for "unlawful employment practices," including terminating McIntyre for having complained of racial harassment and failing to accommodate him because of his disability. Am. Compl. [ECF No. 4] 2. McIntyre alleges violations of Title VII for race discrimination, the ADA for failure to accommodate, and for retaliation of a protected activity.

Defendant SAWS moved for summary judgment, arguing that McIntyre's claims should be dismissed with prejudice under the doctrine of *res judicata*, arguing that the claims in this action were known to McIntyre at the time he brought his original case in Bexar County. Therefore, SAWS argues, the claims here either were or could have been raised in that action, and McIntyre should be barred from raising them in a subsequent action. Alternatively, SAWS argues that summary judgment is warranted because all claims—except the retaliation claims—are time barred under the appropriate statute of limitation. Regarding the retaliation claim, SAWS argues that SAWS had a legitimate, nondiscriminatory, and nonretaliatory reason in terminating McIntyre and that McInytre cannot raise a question of fact as to pretext.

### III. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S.

5

242, 247 (1986). The moving party bears the burden of establishing the lack of a genuine issue of material fact. Id. "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant does not bear the burden of proof at trial, he is entitled to summary judgment if he can point to an absence of evidence to support an essential element of the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Similarly, a movant without the burden of proof at trial may be entitled to summary judgment if sufficient evidence "negates" an essential element. *Id.* The lack of proof as to an essential element renders all other facts immaterial. *Id.*

A fact is material if it could affect the outcome of a case. *Anderson*, 477 U.S. at 247. A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* To survive summary judgment, a nonmoving party must present specific facts or evidence that would allow a reasonable factfinder to find in his favor on a material issue. *Anderson*, 477 U.S. at 247. However, merely asserting a factual dispute or conclusory denials of the allegations raised by the moving party is insufficient; the nonmoving party must come forward with competent evidence. *Id.* at 249-250. The nonmoving party may set forth specific facts by submitting affidavits or other evidence that demonstrates the existence of a genuine issue. *Id. See also* Fed. R. Civ. P. 56(c). Competent evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in her favor. *Id.*

### IV. ANALYSIS

Plaintiff's suit alleges employment discrimination, a hostile work environment, and also that his separation was based upon discrimination in violation of Title VII and the ADA. Under

Title VII, it is unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Under the ADA, it is similarly unlawful to discriminate against a qualified individual on the basis of disability with regard to discharge or compensation of employees. 42 U.S.C. § 12112. The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8). Defendant argues that summary judgment should be granted, and this case dismissed, for three reasons. First, that the doctrine of *res judicata* bars this lawsuit in its entirety. Second, that—with the exception to McIntyre's termination—all of McIntyre's claims of discrimination are time-barred by an applicable statute of limitations. And third, that McIntyre cannot establish a *prima facie* case for discrimination or establish that SAWS's reasoning was pretextual. The Court will take those arguments separately.

### a. Res Judicata Doctrine

The doctrine of res judicata precludes relitigation of claims that have been finally adjudicated or arise out of the same subject matter and could have been litigated in the prior action. *Oreck Direct LLC v. Dyson Inc.*, 560 F.3d 398, 401 (5th Cir. 2009); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). The requirements of res judicata are: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *In re Ark–La–Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007); *Amstadt*, 919 S.W.2d at 652.

The critical questions here are whether the Bexar County District Court's prior judgment was "on the merits" and whether all of the claims raised here were or could have been raised in

the prior suit. In the instant suit, McIntyre alleges disparate treatment and hostile work environment in nearly identical terms to his original state action, and he cites the same events that he relied upon in the state action. There is no dispute that these are the same parties at issue in the prior state case.

SAWS first raised the issue of *res judicata* in a motion to dismiss before Magistrate Judge Primomo, and SAWS incorporates those arguments here. SAWS argued that any allegations connected with his first EEOC charge are barred because McIntyre could have raised them in his prior state claim. SAWS further claimed that McIntyre could have brought claims based on his termination because he was discharged while his EEOC charge was pending and before his suit was filed. Indeed, McIntyre's state suit included allegations that he was separated from his job "because Defendant was no longer able to accommodate Plaintiff based on his illness." Am. Pet. [ECF No. 5-4] 19-23. Thus, because McIntyre was aware of his termination at the time he filed his state suit—and because that suit arose from the same occurrence—all of the claims here could have been raised in the prior suit. According to SAWS, the state court's dismissal of his claims was a final judgment on the merits because, in the Fifth Circuit, dismissals with prejudice on the basis of governmental immunity are final judgments on the merits for claim preclusion purposes. Resp. in Support of Mot. to Dismiss [ECF No. 11] (citing *Sims v. City of Madisonville*, CIV.A. H-14-2145, 2015 WL 4040575, at *4 (S.D. Tex. July 1, 2015) and *Caro v. City of Dallas*, No. 3:15-CV-1210-L, 2016 WL 397084, at *7 (N.D. Tex. Feb. 1, 2016)). SAWS therefore argues that all three elements of *res judicata* have been met and that McIntyre is barred from filing suit here.

McIntyre did not respond to SAWS' *res judicata* arguments either in his Response [ECF No. 10] to the previous motion to dismiss or in his Response [ECF No. 26] to the instant motion for summary judgment. Instead, McIntyre's response was focused solely on whether McIntyre was able

to satisfy the *McDonnell Douglas* framework required in ADA and Title VII cases. Accordingly, because McIntyre's failed to respond to SAWS' arguments, SAWS' arguments regarding *res judicata* are taken as conceded and this Court may issue summary judgment on that basis alone.

However, SAWS also argued in the alternative that even if the doctrine of *res judicata* does not preclude some or all of McIntyre's claims, SAWS is still entitled to summary judgment because McIntyre's claims are time-barred. Further, SAWS claims that even if the claims were not time-barred, McIntyre's claims cannot survive the *McDonnell Douglas* framework because SAWS had a legitimate, nondiscriminatory and nonretaliatory reason to terminate McIntyre and there is no evidence of pretext. The Court addresses those arguments below.

b. **Statute of Limitations**

Plaintiffs alleging discrimination or retaliation under Title VII or the ADA must first exhaust their administrative remedies before filing suit in federal court. A plaintiff exhausts his administrative remedies by timely filing a charge with the EEOC and receiving a notice of right to sue. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). Under Title VII, a charge must be filed within 180 days after the alleged unlawful employment practice. 42 U.S.C. §2000e-5(e)(11). However, if the employee has initially instituted proceedings with a State or local agency before filing with the EEOC, a charge must be filed within 300 days of the alleged unlawful employment practice. This requirement is the same under the ADA. *See* 42 U.S.C. § 12117(a) (noting that "[t]he powers, remedies, and procedures" available under the ADA mirror those for § 2000e-5).

SAWS argues that plaintiff is precluded from suing under Title VII or the ADA because he failed to file a timely EEOC charge within 300 days of the allegedly unlawful employment practices at issue here. McIntyre's second EEOC charge was filed on December 16, 2015. To be timely, this EEOC charge can only include allegedly unlawful conduct arising within 300 days—

9

*i.e.* after February 18, 2015. Except for McIntyre's termination from SAWS, all of the allegedly unlawful conduct in McIntyre's complaint occurred before February 18, 2015. Further, any claims from allegedly unlawful conduct included in McIntyre's first EEOC charge would be barred as untimely because McIntyre failed to bring suit on those claims within 90 days. Therefore, according to SAWS, all of McIntyre's claims—with the exception of his termination—are barred as untimely. Summ. J. Mot. [ECF No. 24] 8-9.

Again, McIntyre did not respond to this argument. It is therefore taken as conceded, and all claims based on conduct occurring before February 18, 2015 will be dismissed as untimely. Thus, even assuming the doctrine of *res judicata* does not preclude *all* McIntyre's claims here, McIntyre's only timely claims are those relating to his February 2015 termination.

### c. McDonnell Douglas

Finally, McIntyre's remaining claims are that SAWS discriminated against him based on his race and disability by denying reasonable accommodation and terminating him. He also alleges that the termination was in retaliation for filing the first EEOC complaint and pursuing the lawsuit in Bexar County District Court.

Discrimination cases under Title VII and the ADA are conducted under a burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In Title VII cases, plaintiffs must first establish a *prima facie* case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason or the adverse action. *Id.* The burden then shifts back to plaintiff to establish that the legitimate reasons offered were not the true reasons, but merely pretext for discrimination. *Id.* "Although

intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Burdine,* 450 U.S. at 253).

SAWS argues that McIntyre cannot raise a *prima facie* case as to any cause of action. In the alternative, SAWS argues that even if McIntyre can raise a *prima facie* case, SAWS had a legitimate, nondiscriminatory and nonretaliatory reason for terminating McIntyre, and there is no evidence that would allow a finding of pretext.

### 1. McIntyre cannot raise a *prima facie* case of failure to accommodate.

The ADA provides that no covered entity shall discriminate against a qualified individual with a disability because of the disability in regard to "the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified person with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A disability is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." § 12102(2).

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must present evidence showing (1) he or she suffers from a disability; (2) he or she is qualified for the job; (3) he or she was subject to an adverse employment action because of his or her disability; and (4) he or she was replaced by or treated less favorably than non-disabled employees. *E.E.O.C. v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009). Discrimination on the

basis of disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(a). To establish a discrimination claim for failure to accommodate, a plaintiff must show that: 1) the employer is covered by the ADA, 2) the employee suffered from a disability, 3) the employee could perform the essential functions of the job with or without reasonable accommodation, and 4) the employer had notice of the disability and failed to reasonably accommodate the disability. *See Bridges v. Dep't of Soc. Serv.*, 254 F.3d 71 (5th Cir. 2001) (unpublished) (citing *Lyons v. Legal Aid Soc'y,* 68 F.3d 1512, 1515 (2d Cir. 1995)); *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).

SAWS argues that McIntyre is not a qualified person with a disability because he cannot work in any capacity, and therefore he cannot perform the essential functions of his position with reasonable accommodations. Indeed, McIntyre confirmed in his deposition that he has not been able to work since August 2014 and remains unable to return to work. McIntyre Depo. 17-18. Thus, according to SAWS, no accommodation—reasonable or unreasonable—would have allowed McIntyre to perform the essential functions of his position. Therefore, SAWS argues, McIntyre cannot establish two elements of a *prima facie* case of discrimination based on a failure to accommodate: that McIntyre is a qualified individual with a disability and that SAWS failed to make reasonable accommodations.

McIntyre argues that he requested "any accommodation from SAWS so that he could remain on the books as an employee." Resp. 10. Specifically, McIntyre claims that he should have been allowed sick leave pool donations to allow him to remain on leave for a longer period of time. When McIntyre inquired with human resources regarding the sick leave pool donations, he

was informed that he did not qualify for donations because he was on probationary employment status following a write-up in July 2014. *Id.*; McIntyre Depo. 46-47.[2] However, it is unclear whether this was a request for an ADA accommodation or more mundane HR inquiry. Further, even if McIntyre explicitly requested access to sick leave donations as an ADA accommodation, it is nonsensical to suggest that access to additional sick leave would have allowed McIntyre to perform the essential duties of his position. Rather, additional sick leave would merely allow McIntyre to remain "on the books" collecting a pay check for work that he could not—and to date, cannot—perform. While some additional leave time can be a reasonable accommodation, "an employer is not required to provide a disabled employee with indefinite leave." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016).

At bottom, McIntyre cannot point to any accommodations that SAWS could have made that would have allowed him to perform the essential duties of his position. He remains medically unable to work in any capacity, and is unable to point to any accommodation, reasonable or otherwise, that would allow him to perform duties as an engineer for the San Antonio Water System. Rather, McIntyre believes that SAWS should have had "other measures" assist him with his disabilities, including additional financial resources or indefinite leave. There is no evidence that would allow a reasonable jury to determine such accommodations would allow McIntyre to return to work or perform his duties. Accordingly, McIntyre is unable to establish an essential element of his ADA discrimination claim, and SAWS is entitled to judgment as a matter of law.

---

[2] That July 2014 write-up was the basis of McIntyre's first EEOC complaint.

### 2. McIntyre cannot establish a prima facie case of race discrimination.

To establish a *prima facie* case under Title VII, a plaintiff must present evidence showing he or she (1) is a member of a protected class; (2) was qualified for his or her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably. *Okoye v. Univ. of Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999). SAWS does not contest that McIntyre was the member of a protected class or that he was subject to an adverse action. However, SAWS does argue that there is no evidence that McIntyre was qualified for his position at the time of his separation or that other similarly situated employees outside his group were treated more favorably.

First, SAWS argues that McIntyre was not qualified for his position because he is medically unable to work in any capacity. Second, SAWS also argues that McIntyre cannot point to any employee who replaced him or was treated more favorably. For support, SAWS points to McIntyre's own testimony that he does not know who, if anyone, was hired to fill his position. McIntyre Depo. 114. McIntyre also could not name an employee who had been able to remain on unpaid leave longer than six months or who had been able to remain employed despite not being able to return to work. McIntyre Depo. 73.

McIntyre argues that he was qualified at the time of his termination. For evidence, McIntyre points to his own testimony that he had received good performance reviews in the past. McIntyre Depo. 69-70. However, those evaluations took place prior to McIntyre's medical issues, which rendered him incapable of performing his work duties. There is no evidence that McIntyre can perform any duties at all for SAWS. His doctor has stated that he is unable to work in any

capacity, and McIntyre himself testified that he has been unable to perform work of any kind since August 2014. ECF No. 24-3; McIntyre Depo. 18. Accordingly, McIntyre has failed to provide evidence that he was qualified for the position *at the time he was terminated.*

McIntyre also claims that other employees were treated more favorably, pointing out that other employees were not scrutinized, reprimanded, or terminated. McIntyre Depo. 82-85, 87, 89, 106-110. However, McIntyre also testified that he did not know what kinds of evaluations those employees received or whether they took leaves of absence. *Id.* Further, the alleged disparate treatment in scrutiny and reprimands took place prior to McIntyre's leave of absence beginning in August 2014 and well before his February 2015 termination. It therefore does not appear that these employees were similarly situated or that any employee—similarly situated or not—was treated more favorably regarding SAWS' leave policies. Accordingly, McIntyre has failed to provide evidence that he was replaced by employees outside his protected class or that similarly situated employees outside his protected class were treated more favorably.

There is no evidence that would allow a reasonable jury to determine that McIntyre was qualified for his position or that similarly situated employees were treated more favorably regarding SAWS' leave policies. Thus, McIntyre is unable to establish an essential element of his Title VII discrimination claim, and SAWS is entitled to judgment as a matter of law.

### 3. McIntyre cannot establish a prima facie case of retaliation.

Cases of retaliation follow a similar framework as discrimination cases. A plaintiff establishes a prima facie case of retaliation by showing (1) he or she engaged in a protected activity, (2) that an adverse employment action occurred, and (3) there was a causal connection between participation in the protected activity and the adverse action. *Shirley v. Chrysler First,*

*Inc.*, 970 F.2d 39, 41 (5th Cir. 1992). It is clear to this Court—and SAWS does not contest—that McIntyre engaged in a protected activity when he filed his EEOC complaints and the accompanying lawsuits. Further, it is clear that McIntyre's termination was an adverse employment action. However, SAWS argues that there is no evidence from which a reasonable jury could infer a causal connection between McIntyre's termination and his EEOC charges.

"In order to establish the causal link between the protected conduct and the illegal employment action as required by the prima facie case, the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) (emphasis added). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. General Services Administration*, 110 F.3d 1180, 1188 (5th Cir. 1997). However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam). The mere fact that some adverse action was taken after an employee engaged in a protected activity is not always enough to support a *prima facie* case. *Swanson*, 110 F.3d at 1188, n. 3.

McIntyre argues that the temporal proximity between the EEOC charges and McIntyre's termination are sufficient evidence of a causal connection. Specifically, McIntyre points out that SAWS denied access to the sick leave pool donation within months of the August 2014 EEOC charge, and terminated him within six months of the filing. Resp. 12. For support, McIntyre argues that Fifth Circuit has previously noted that "a time lapse of up to four months has been

16

found sufficient to satisfy the causal connection for summary judgment purposes." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). Further, McIntyre claims that the Fifth Circuit has found as many as fourteen months sufficient to raise a *prima facie* case of retaliation. *See Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992) (affirming a district court's refusal to amend its finding of retaliation after a bench trial in which plaintiff and others testified that her supervisor constantly harassed her about filing an EEOC complaint for 14 months before terminating her).

SAWS counters that this is not the kind of "very close" temporal proximity that can raise an inference of retaliation without more evidence. For support, SAWS points out that the Fifth Circuit has held in other cases that five to six months between a protected activity and an adverse action does not support a causal inference. Mot. 17 (citing *Everett v. Cent. Miss., Inc. Head Start Program*, 444 F. App'x 38, 47 (5th Cir. 2011)). Further, SAWS points out that McIntyre has no other evidence suggesting a causal connection between his termination and a protected activity, and that his cited cases are therefore inapposite. For example, while the *Evans* court noted that a time lapse of "up to four months" has been found to satisfy the causal connection prong, the actual adverse action at issue occurred after only *five days*. *Evans*, 246 F.3d at 354. Similarly, while the *Shirley* court found in favor of a plaintiff who was terminated fourteen months after her EEOC complaint, the evidence also included testimony from plaintiff and others that her supervisor had routinely harassed the plaintiff about filing those charges. *Shirley*, 970 F.2d at 42-43. Thus, while the evidence included a fourteen month gap between the protected activity and the adverse action, the *Shirley* plaintiff was also able to provide *additional* evidence of a causal connection beyond mere temporal proximity. Thus, SAWS argues, McIntyre's cases are unhelpful. This Court agrees.

The Court finds that McIntyre has not provided evidence sufficient to infer a causal connection between his August 2014 EEOC complaint and his February 2015 termination. Indeed,

McIntyre points solely to the temporal proximity here. Temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation. *Breeden,* 532 U.S. at 273; *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). But the six month gap between McIntyre's August EEOC complaint and his February 2016 termination is not "very close" and is therefore insufficient without more evidence. No reasonable jury could look to the evidence here and infer a causal connection between McIntyre's protected EEOC complaint and his termination six months later.

While the Supreme Court has described the burden of establishing a *prima facie* case as "not onerous"—*Burdine*, 450 U.S. at 253-54—there is still some minimal burden. If McIntyre is able to establish a *prima facie* case of retaliation here, any adverse action occurring within six months of a protected activity would give rise to a claim under Title VII or the ADA. This cannot be the case, as it would render the first stage of the *McDonnell Douglas* framework entirely superfluous. Without some other evidence, a plaintiff wishing to establish a *prima facie* case of retaliation must point to "very close" temporal proximity between the protected activity and adverse action. Accordingly, since McIntyre has failed to provide such evidence, he has failed to make a *prima facie* showing of retaliation, and SAWS is entitled to judgment as a matter of law

### 4. Even if McIntyre were able to raise a *prima facie* case as to any Title VII or ADA claim, SAWS has a legitimate, nondiscriminatory and nonretaliatory reason, and McIntyre has no evidence of pretext.

Finally, SAWS argues that even if McIntyre were able to clear the "not onerous" hurdle of establishing a *prima facie* case under the ADA or Title VII, the burden would merely pass to SAWS to articulate a legitimate, nondiscriminatory and nonretaliatory reason for terminating McIntyre. *Burdine*, 450 U.S. at 252-53. SAWS has introduced evidence that it terminated McIntyre because he was—and remains—unable to work in any capacity. Specifically, McIntyre

exhausted his FMLA leave and spent more than six-months on leave, exhausting the maximum allowable leave under SAWS' policies. Under that policy, any employee unable to perform the essential functions of his or her position at the expiration of six months with reasonable accommodation will be terminated. Thus, under SAWS policy, McIntyre was eligible for termination regardless of his protected activity. Thus, SAWS has provided a legitimate, nondiscriminatory and nonretaliatory reason for McIntyre's termination.

Since SAWS can carry its burden under *McDonnell Douglas*, McIntyre must provide evidence that SAWS' given reason is incorrect and that the real reason was discriminatory. That is, McIntyre must give some evidence allowing a jury to infer that SAWS' given reason was merely pretext. *Reeves*, 530 U.S. at 143. To establish pretext, the presented evidence must allow a reasonable jury to find that the proffered reason is "false or unworthy of credence," and that the true reason is discrimination. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011); *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Reeves*, 530 U.S. at 147 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). However, this disbelief must be supported by some evidence.

McIntyre argues that the proffered reason is unworthy of credence because he was refused sick leave pool donations. "This fact refutes Defendant's assertions that there was not discrimination involved in Plaintiff's termination." Resp. 13. In fact, it does not. Further, even if SAWS racially discriminated against McIntyre by denying him access to sick leave pool donations—a claim that McIntyre raises here for the first time—that would demonstrate neither

19

that SAWS' reason for his termination was false or unworthy of credence, nor that the real reason was a retaliatory one. There is frankly no evidence here that SAWS' proffered reason was false or pretextual, and no reasonable jury could find or infer based on the non-evidence that McIntyre has provided. Accordingly, SAWS is entitled to judgment as a matter of law.

## 5. CONCLUSION

In sum, McIntyre failed to address SAWS' argument that his claims here are barred by *res judicata* and the requirement under the ADA and Title VII to exhaust administrative remedies, including the applicable filing limitations. While some of these claims may have had merit, they are all now untimely (with the possible exception of his termination). Further, McIntyre cannot establish a *prima facie* case for discrimination or retaliation claims arising from his termination. Finally, even if he could establish a *prima facie* case, SAWS has provided a legitimate business reason for McIntyre's termination. McIntyre has pointed to no evidence that would allow a jury to find that reason was false or pretextual.

McIntyre is unable to work and wants to remain "on the books" as an employee of SAWS. Despite the potential merits of his claims, if there were any, his minimalist approach to responding to the legal arguments and evidence provided by SAWS requires this Court grant SAWS' motion for summary judgment. Accordingly, for the reasons discussed above, defendant's motion for summary judgment was granted.

A separate order issued March 31, 2017.

_____
Royce C. Lamberth
United States District Judge

DATE: 4/26/17